1

2

3

4

5          IN THE UNITED STATES DISTRICT COURT

6          FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    NADRA FOSTER,                                    No. C 10-3703 SI

9              Plaintiff,                              **ORDER GRANTING IN PART AND
                                                       DENYING IN PART BERKELEY**
10       v.                                           **DEFENDANTS' MOTION FOR
                                                       SUMMARY JUDGMENT; GRANTING**
11   BERKELEY POLICE DEPARTMENT,                      **PACIFICA DEFENDANTS' MOTION
                                                       FOR SUMMARY JUDGMENT**
12             Defendant.
     _____/
13

14          On November 18, 2011, the Court held a hearing on defendants' motions for summary judgment.

15   For the reasons set forth below, the Berkeley defendants' motion for summary judgment is GRANTED

16   IN PART and DENIED IN PART, and the Pacifica defendants' motion is GRANTED.

17

18                                      **BACKGROUND**

19          On August 20, 2010, plaintiff Nadra Foster filed this lawsuit alleging injuries as a result of her

20   arrest for trespass by Berkeley police officers on August 20, 2008 at KPFA radio station in Berkeley,

21   California.  In the first amended complaint, plaintiff sued the Berkeley Police Department, its former

22   Chief, and Berkeley Police Officers McDougall and Keene (collectively the "Berkeley defendants"),

23   and Lois Withers (the business manager at KPFA at the time of plaintiff's arrest), KPFA, and KPFA's

24   parent organization, the Pacifica Foundation, Inc. (collectively the "Pacifica defendants").

25          Prior to her arrest on August 20, 2008, plaintiff had worked for a number of years as an unpaid

26   volunteer at KPFA.  Withers states in her declaration that she had received many complaints from other

27   employees about plaintiff and her children's use of station resources, computers, workstations and

28   printers, "for no apparent station business," as well as concerns about plaintiff's children being left

United States District Court
For the Northern District of California

1  unsupervised at the station. Withers Decl. ¶ 6. Withers states that she approached plaintiff several times

2  about these complaints, and the Pacifica defendants have submitted a November 27, 2007 email from

3  Withers to KPFA General Manager Lemlem Rijio in which Withers informed Rijio that she had had a

4  conversation with plaintiff about her children and using KPFA resources for personal reasons. Ngo

5  Decl. Ex. B.

6      It is undisputed that on May 8, 2008, defendant Withers, KPFA's business manager at the time,

7  confronted plaintiff about the fact that plaintiff had used station printers for personal business. The

8  parties dispute whether plaintiff physically and verbally threatened Withers during this interaction.

9  However, it is undisputed that after this interaction Withers emailed Rijio and Dominga Estrada, the

10  Human Resources Director at Pacifica, complaining about the incident. Ngo Decl. Ex. C. In her email

11  to Rijio and Estrada, Withers stated that plaintiff yelled at her and "pushed back against me forcefully

12  so we were within an inch of each other." *Id.* Riijio responded to Withers' email, stating that "Nadra

13  is no longer welcome here and she will receive notification of that immediately." *Id.* Ex. D. In her

14  declaration, Withers states that as of May 8, 2008, she believed that plaintiff was no longer allowed at

15  the station. Withers Decl. ¶ 8. Sasha Lilley, KPFA's interim Program Director in 2008, testified at her

16  deposition that based upon a conversation that she (Lilley) had with Rijio, she believed that Rijio told

17  plaintiff that she could not come back to the station. Plaintiff disputes that anyone ever told her that she

18  could not come back to the radio station after the May 8, 2008 incident. At her deposition, plaintiff

19  testified that no one ever told her she was banned from the station, and that she in fact came back to the

20  station on numerous occasions between May 8 and August 20, 2008.

21      On August 20, 2008, a KPFA employee complained to Withers that plaintiff was at the station,

22  occupying an on-air studio that he needed to use. Withers Decl. ¶ 9. Plaintiff does not dispute that she

23  was using the employee's studio. Ngo Decl. Ex. F (Foster Depo. at 63:13-19). The parties do dispute

24  whether plaintiff was working on any KPFA material on August 20, 2008. Withers asked another

25  manager, Michael Yoshida, to accompany her to the studio to speak to plaintiff. It is undisputed that

26  Withers and Yoshida approached plaintiff, and Withers told plaintiff that she should not be at the station

27  and that she should leave. Plaintiff responded by stating that she did not believe that Withers had the

28  authority to tell plaintiff to leave. Withers told plaintiff that she would call the police if plaintiff refused

2

United States District Court
For the Northern District of California

1    to leave.  Plaintiff refused to leave the studio.

2         Withers then sought advice from Pacifica's Executive Director, Nicole Sawaya, and Human

3    Resources Director Estrada.  Estrada and Sawaya deliberated on whether to call the police, and

4    ultimately Estrada instructed Withers to call the police.  With Yoshida, Sawaya and Estrada present,

5    Withers called the police and reported that plaintiff was causing a disturbance and refused to leave the

6    premises.  The dispatch log memorializing Withers' call states "PER RP ONGOING PROB WITH

7    RESP HANGING OUT IN STATION LOBBY REFUSING TO LEAVE."  Panto Decl. Ex. H.  Officer

8    McDougall was on duty, and he was dispatched via his police radio to respond.  McDougall Decl. ¶ 2.

9    The dispatcher informed McDougall that the reporting party was "Lois" and that she had requested

10   police assistance with a person who was a "415" (meaning a person who was causing a disturbance) and

11   who had refused to leave the premises.  *Id*.

12        When McDougall arrived at the radio station, he was greeted by Withers, who identified herself.

13   Withers told McDougall that she was the manager who called the police because plaintiff had previously

14   been a volunteer at the radio station, but that she had been banned from the station for aggressive

15   behavior.  *Id*. ¶ 3.  Withers told McDougall that plaintiff was disrupting the business of the station and

16   that she refused to leave.  *Id*.  Withers then walked McDougall to the room where plaintiff was sitting

17   and pointed out plaintiff as the person that she wanted removed from the premises.  *Id*.  McDougall then

18   asked Withers to go back to the front door to meet another police officer, Officer Keene, who would be

19   arriving shortly, and to escort that officer back to the room where plaintiff was when he arrived.  *Id*. ¶

20   4.

21        McDougall states that when he entered the room, plaintiff was seated at a desk with headphones

22   on.  *Id*. ¶ 5.  McDougall said to plaintiff, "Can I talk to you?"  *Id*. ¶ 6.  According to McDougall,

23   plaintiff replied in an antagonistic manner, "I can hear you."  *Id*. ¶ 7.  McDougall replied, "I would

24   appreciate it if you took off the headphones."  *Id*. ¶ 8.  Plaintiff then took off her headphones.  *Id*.

25   McDougall asked plaintiff what the problem was between her and the radio station, and plaintiff would

26   not discuss the matter with McDougall, stating something to the effect of "I can't really say anything

27   about that."  *Id*. ¶¶ 10-11.  McDougall told plaintiff that he had talked to the manager and the manager

28   had informed him that plaintiff was not supposed to be at station.  *Id*. ¶ 11.  According to McDougall,

United States District Court
For the Northern District of California

plaintiff stated that she was an employee and that she was not going to leave.  *Id*.  It is undisputed that McDougall asked for plaintiff's identification, and that plaintiff refused to provide her identification. It is also undisputed that McDougall asked plaintiff to leave the station, and that plaintiff refused to leave the station, insisting that she had a right to be there.  McDougall Decl. ¶¶ 16-18; FAC ¶¶ 28-29.

McDougall then decided to handcuff plaintiff.  McDougall states that he decided to handcuff plaintiff for safety reasons because (1) it had been reported that plaintiff was causing a disturbance before he arrived; (2) it had been reported that plaintiff refused to leave when asked by Withers, a manager; (3) Withers had informed McDougall that plaintiff had been banned by the station for aggressive behavior; (4) plaintiff refused to discuss the matter with McDougall; (5) plaintiff refused to leave the station when asked by McDougall; (6) plaintiff was increasingly belligerent with McDougall; and (7) plaintiff refused to provide her identification, effectively preventing him from conducting a records check to see if plaintiff had a violent criminal history or an outstanding arrest warrant. McDougall Decl. ¶¶ 18-20.  McDougall states he also decided to handcuff plaintiff because he determined that he had probable cause to arrest her for trespassing, although he had not yet decided whether to make a custodial arrest.  *Id*. ¶ 19.

Plaintiff denies that she was belligerent or hostile with McDougall prior to him handcuffing her. According to McDougall, when he handcuffed plaintiff she started fighting with him.  By then, Officer Keene was in the room, and McDougall and Keene decided to put plaintiff on the ground to facilitate handcuffing her.  The Berkeley defendants claim that plaintiff became infuriated and began to violently punch, fight, and kick the officers, and that plaintiff bit McDougall's right thumb.  McDougall states that he later sought medical treatment for this injury.  Plaintiff claims that the officers used excessive force on her, and that she has suffered permanent injuries as a result.  Backup officers arrived, and plaintiff was placed in a restraint device known as a WRAP in order to remove her from the premises. Plaintiff was arrested for trespass, assaulting two officers, and forceful resistance to an officer.

On August 22, 2008, the Alameda County District Attorney charged plaintiff with five counts: trespass in violation of Penal Code § 602(o), two counts of misdemeanor "Resist, Delay of Peace Officer or EMT" in violation of Penal Code § 148(a)(1), and two counts of misdemeanor battery "Battery with

Injury on a Police Officer" in violation of Penal Code § 243(c)(2).  Ngo Decl. Ex. P.  The criminal

proceeding "ended in plaintiff's favor in March of 2010."  FAC ¶ 82.

**LEGAL STANDARD**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The

moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.

*See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party, however, has no burden to

negate or disprove matters on which the non-moving party will have the burden of proof at trial.  The

moving party need only demonstrate to the Court that there is an absence of evidence to support the non-

moving party's case.  *See id.* at 325.

The burden then shifts to the non-moving party to "designate specific facts showing that there

is a genuine issue for trial."  *Id.* at 324.  To carry this burden, the non-moving party must "do more than

simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus.

Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "The mere existence of a scintilla of

evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for

the [non-moving party]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the evidence is viewed in the light most favorable to

the non-moving party, and all justifiable inferences are to be drawn in its favor.  *Id.* at 255.  "Credibility

determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts

are jury functions, not those of a judge [when she] is ruling on a motion for summary judgment."  *Id.*

Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues

of fact and defeat summary judgment.  *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th

Cir.1979); *see also Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (observing

that there is no genuine issue of fact "where the only evidence presented is 'uncorroborated and

self-serving' testimony" (quoting *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996))).  The

evidence presented by the parties must be admissible.  Fed. R. Civ. P. 56(c).  Hearsay statements found

in affidavits are inadmissible.  *Fong v. Am. Airlines, Inc.*, 626 F.2d 759, 762-63 (9th Cir. 1980).

United States District Court
For the Northern District of California

5

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DISCUSSION**

**I.     Berkeley defendants' motion for summary judgment**

The Berkeley defendants move for summary judgment on all claims except for the fourth, tenth and eleventh causes of action against defendants Officer McDougall and Officer Keene.  The fourth cause of action is for excessive force in violation of Fourth Amendment pursuant to 42 U.S.C. § 1983, the tenth cause of action is for intentional infliction of emotional distress, and the eleventh cause of action is for assault and battery.  Defendants McDougall and Keene concede that there are disputes of fact on these claims.

**A.     Arrest claims against defendants McDougall and Keene (42 U.S.C. § 1983 claims for lack of reasonable suspicion and lack of probable cause)**

Plaintiff alleges that defendants violated her rights under the Fourth Amendment by arresting her without probable cause.  The Fourth Amendment requires that an arrest be supported by probable cause. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001); *Michigan v. Summers*, 452 U.S. 692, 700 (1981) (an arrest is unlawful unless there is probable cause to support it).  Defendants move for summary judgment on all of plaintiffs' claims arising out of her arrest on the ground that they had probable cause to arrest plaintiff for trespass.

Defendants contend that the undisputed facts establish that Officer McDougall had probable cause to arrest plaintiff for trespass under either California Penal Code section 602(o) or Berkeley Municipal Code section 13.52.020.

California Penal Code section 602(o) makes it a misdemeanor willfully to commit a trespass by:

Refusing or failing to leave land, real property, or structures belonging to or lawfully occupied by another and not open to the general public, upon being requested to leave by (1) a peace officer at the request of the owner, the owner's agent, or the person in lawful possession, and upon being informed by the peace officer that he or she is acting at the request of the owner, the owner's agent, or the person in lawful possession, or (2) the owner, the owner's agent, or the person in lawful possession. . . .

Berkeley Municipal Code section 13.52.020, titled "Entering upon property after being personally forbidden to do prohibited" provides,

It is unlawful for any person to enter or go upon or pass over or remain upon any land of another after being personally forbidden to do so by the owner of said property, or by the person entitled to the possession thereof for the time being, or the authorized agent

6

1    of either.

2    Orebic Decl. Ex. H.

3          Defendants contend that Officer McDougall had probable cause to arrest plaintiff for trespass

4    because (1) McDougall was dispatched to a radio station in a commercial building that was not open

5    to the general public; (2) the dispatcher reported that the reporting party, "Lois," wanted removed from

6    the building a person who had already refused to leave and who was causing a disturbance; (3) when

7    McDougall arrived he was met by Lois Withers who identified herself as the manager, informed

8    McDougall that plaintiff had been previously banned from the station for aggressive behavior, and told

9    McDougall that she wanted plaintiff removed from the station; (4) McDougall explained to plaintiff that

10   the radio station was demanding that she leave and McDougall asked plaintiff to leave the station; and

11   (5) plaintiff refused to leave the station.

12         The Court concludes that McDougall's arrest of plaintiff was supported by probable cause based

13   on the totality of the circumstances known to McDougall.  A reasonable police officer would have

14   believed that Withers had the authority to request plaintiff to leave the station.  It is undisputed that

15   Withers told Officer McDougall that she was a manager at KPFA, that plaintiff was banned from KPFA,

16   that Withers had told plaintiff to leave and that plaintiff refused.  Other people were present at the

17   station, and no one questioned Withers' authority to direct the officers to remove plaintiff.[1]  It is also

18   undisputed that plaintiff refused to leave the station when McDougall told her to leave.  Under similar

19   circumstances, courts have held that police officers had probable cause to arrest individuals for trespass.

20   *See Blankenhorn v. City of Orange*, 485 F.3d 463, 474-75 (9th Cir. 2007) (affirming summary judgment

21   in favor of defendants and finding police officer had probable cause to arrest for trespass in violation

22

23

24   _____

25         [1] At oral argument, plaintiff's counsel argued that there was no probable cause because during
     the incident, Interim Program Manager Lilley asked the officers to leave.  However, Lilley testified at
26   her deposition that she entered the studio at the point when the officers were sitting on plaintiff and
     attempting to handcuff her, and it was then that she asked the officers to leave because she was trying
27   to "deescalate" the situation.  Panto Decl. Ex. C (Lilley Depo. at 47:2-13, 49:5-8).  Lilley's testimony
     does not undercut the existence of probable cause to arrest plaintiff for trespass because Lilley did not
     at any time prior to plaintiff's arrest tell the officers that Withers did not have the authority to have
28   plaintiff removed from the station, or that plaintiff was lawfully at the station.

**United States District Court**
For the Northern District of California

of section 602(n)[2] where mall security officer informed police that individual had been previously banned from mall and security officer requested that police arrest individual); *James v. City of Long Beach*, 18 F. Supp. 2d 1078, 1086 (C.D. Cal. 1998) (granting summary judgment in favor of defendants and finding probable cause to arrest for trespass in violation of section 602(n) where officers were dispatched to baseball stadium, stadium manager requested that officers remove individual, and officer asked individual to leave stadium).

Plaintiff argues that this case is controlled by *Bolbol v. City of Daly City*, 754 F. Supp. 2d 1095 (N.D. Cal. 2010), where the court denied the defendant's motion for summary judgment on the plaintiff's claim for a violation of her Fourth Amendment rights. In *Bolbol*, a police officer arrested the plaintiff for trespass in violation of California Penal Code section 602(m) pursuant to a citizen's arrest. The question in *Bolbol* was whether the police officer had independent probable cause to make the arrest. *Id*. at 1108 (citing *Arpin v. Santa Clara Valley Trans. Agcy.*, 261 F.3d 912, 925 (9th Cir. 2003) ("In establishing probable cause, officers may not solely rely on the claim of a citizen witness that he was a victim of a crime, but must independently investigate the basis of the witness' knowledge or interview other witnesses.")). The district court denied the defendant's motion for summary judgment because the plaintiff's "documentary evidence shows that Kranz did not in fact stop to take stock of the situation at the scene of the alleged trespass or to investigate the Circus employees' trespass claims once he reached the site. Rather, he immediately advanced physically on Bolbol and Ennis." *Id*. at 1109. The court found that "given the language and case law interpreting Cal. Pen. Code § 602(m), Officer Kranz could not have had probable cause to believe that Bolbol and Ennis intended to violate that specific provision of the trespass statute." *Id*. The court noted that section 602(m) prohibits the "'[e]ntering and occupying [of] real property or structures of any kind without the consent of the owner, the owner's agent, or the person in lawful possession," and requires that the occupation reflect the party's intent to "remain permanently, or until ousted" or "to dispossess anyone from the property.'" *Id*. (quoting *People v. Wilkinson*, 248 Cal. App. 2d Supp. 906, 908 (1967)); *see also Edgerly v. City and County of San Francisco*, 599 F.3d 946, 955 (9th Cir. 2010) (finding that a reasonable officer would not

---

[2]   Penal Code section 602(o) was formerly labeled 602(n) before it was re-lettered in 2003. *See* 2003 Cal. Legis. Serv. Ch. 805 (S.B. 993).

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    have had probable cause to believe that the defendant had committed a trespass per section 602(m)

2    because there was no evidence that his presence was "nontransient" or "continuous.").

3          *Bolbol* does not aid plaintiff.  Here, unlike the police officer in *Bolbol* who arrested the plaintiff

4    without any investigation, Officer McDougall spoke to plaintiff before arresting her.   Plaintiff

5    acknowledged that there was an "employee dispute," and then refused to discuss the matter further or

6    to provide any identification.  McDougall had also been given a sufficiently detailed report by Withers

7    to establish probable cause that plaintiff was trespassing.  *See Peng v. Mei Chin Penghu*, 335 F.3d 970,

8    978 (9th Cir. 2003) (holding, with regard to a citizen's arrest, that "[a] sufficient basis of knowledge is

9    established if the victim provides facts sufficiently detailed to cause a reasonable person to believe a

10   crime had been committed and the named suspect was the perpetrator.") (internal quotations omitted).

11   Finally, plaintiff was arrested for trespass in violation of section 602(o) which does not require evidence

12   of a party's intent to remain permanently or of a party's continuous presence – facts that would generally

13   require some further investigation by a police officer.

14         Plaintiff contends that the officers were obligated to do an independent investigation as to

15   whether Withers had the authority to tell plaintiff to leave.  However, "'[o]nce probable cause is

16   established, an officer is under no duty to investigate further or to look for additional evidence which

17   may exculpate the accused.'" *Broam v. Bogan*, 320 F.3d 1023, 1032 (9th Cir. 2003) (quoting *Ahlers v.*

18   *Schebil*, 188 F.3d 365, 371 (6th Cir.1999)).  In any event, it is undisputed that Withers was the business

19   manager at KPFA.  Relatedly, plaintiff asserts that there is a genuine issue of material fact as to whether

20   plaintiff was actually banned from KPFA.  Plaintiff argues that if she was never informed of the ban,

21   or if the ban never existed, then she could not have been a willful trespasser.  However, as defendants

22   correctly argue, the issue is not plaintiff's subjective intent, but whether the circumstances, as viewed

23   through Officer McDougall's eyes, gave rise to probable cause to believe that plaintiff was trespassing.

24   *See Blankenhorn*, 485 F.3d at 475 ("[O]ur inquiry is not whether Blankenhorn was trespassing. Rather,

25   it is whether a reasonable officer had probable cause to think he could have been.").  It is undisputed

26   that Withers, a manager, told McDougall that plaintiff had been banned from the station, and thus it was

27   reasonable for McDougall to believe that plaintiff was trespassing.  In addition, plaintiff refused to leave

28   when McDougall asked her to leave the station, and thus McDougall had probable cause to believe that

plaintiff committed trespass in his presence.  Moreover, if McDougall had further investigated whether plaintiff was banned from the radio station, Withers almost certainly would have shown McDougall the May 8, 2008 email from Rijio to Withers stating that "Nadra is no longer welcome here and she will receive notification of that immediately."  Ngo Decl. Ex. D.

The Court further finds that the officers are entitled to qualified immunity because, for all of the reasons stated *supra*, "a reasonable officer could have believed that probable cause existed to arrest." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

### B.    Racial animus and conspiracy claims (42 U.S.C. § 1981, 42 U.S.C. § 1985, 42 U.S.C. § 1986, Cal. Civ. Code § 51.7)

Plaintiff alleges that defendants discriminated against her on the basis of her race, and conspired against her based on her race, when they arrested her and subjected her to excessive force.  To establish a 42 U.S.C. § 1981 claim, plaintiff must prove that defendants intentionally discriminated against her based on her race. *See General Building Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982). Plaintiff's conspiracy claims under 42 U.S.C. § 1985(3)[3] and 42 U.S.C. § 1986 also require proof of discriminatory animus. *See Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) (Section 1985(3) applies only to conduct resulting from racial or other class-based invidiously discriminatory animus); *Mollnow v. Carlton*, 716 F.2d 627, 632 (9th Cir. 1983) ("Section 1986 depends on the existence of a claim under § 1985.").  Similarly, California Civil Code § 51.7 prohibits defendants' using force on account of plaintiff's race, color, ancestry, or national origin. *See Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 880-81 (2007).

Plaintiff asserts that her evidence of racial bias and conspiracy consists of the following: (1) Withers' act of calling the police, and Estrada's authorization of that call, on the theory that if plaintiff had been white the police would not have been called; (2) the fact that Withers and McDougall both described plaintiff as "aggressive";  (3) on the day of the arrest, Withers showed McDougall a letter

---

[3]  The complaint does not specify under which provision of § 1985 plaintiff is suing. The Court assumes plaintiff is alleging a violation of § 1985(3), "Depriving persons of rights or privileges."  The other subsections of § 1985 do not appear to apply: Section 1985(1) is titled "Preventing officer from performing duties" and Section 1985(2) is titled "Obstructing justice; intimidating party, witness, or juror."

written by plaintiff that had been returned to the station; Withers testified that the letter "mentioned the Black Panthers" and "that caught my eye," and Withers also stated that she wasn't aware that plaintiff was doing any work related to prisoners, while plaintiff claims that she was doing programming related to prisoners (Withers Depo. at 185:20-21); (4) on the day of the arrest, McDougall, Withers, and other "authority figures" from KPFA and Pacifica Foundation met to discuss plaintiff's arrest, and it was at that meeting that the KPFA defendants and Pacifica stated that they wanted to go forward with a criminal complaint against plaintiff; and (5) testimony by several KPFA employees about their opinions as to whether there is racism in America and whether the police would have been called if plaintiff had been white.[4]  As against the Berkeley defendants, plaintiff states that her theory of the case is that "a reasonable inference could lead a jury to find that Defendant McDougall perceived Plaintiff through a racially biased lens in that Defendant Withers described Plaintiff as 'aggressive' and Defendant McDougall immediately upon finding Plaintiff decided that her behavior was 'aggressive' which was based upon race bias and no actual fact.  Plaintiff testified that she believed the officers who used force against her had a racial motive because white women do not get 'treated so roughly at their workplace by officers.'" Opp'n to Berkeley Mtn. at 8:11-17.

Defendants contend that plaintiff's claims of racial animus fail because plaintiff's evidence does

---

[4]  Specifically, plaintiff cites defendant Yoshida's deposition testimony in which he was asked for his opinion about racial stereotyping and perceiving African-American people to be criminals. Yoshida responded, "There's racism in America." Panto Decl. Ex. D at 129:7-130:14.  When asked whether there was racism at KPFA, Yoshida answered, "KPFA is part of America, probably strives to overcome racism, but I'm sure it exists to one degree or another." *Id.* at 130:15-20.  Plaintiff also cites KPFA employee Lilley's testimony that she would not have called the police on August 20, 2008, and that she believed plaintiff to be at higher risk of being injured by police due to her race as African-American.  Panto Decl. Ex. C at 123:17-124:15.  Finally, plaintiff cites KPFA employee Johnson's testimony that she believes African-American people experience unique risks from police because of race, and that she does not believe that the management of KPFA would have called the police if plaintiff had been white.  Panto Decl. Ex. E at 191:20-192:10.  Plaintiff also asserts that Johnson testified that she herself had experienced racial bias from KPFA management. Johnson did answer that question in the affirmative, but then stated, "I think it's more not necessarily race bias, but gender patriarchy at the station." *Id.* at 192:13-14.

Defendants properly object to all of this testimony as improper lay opinion testimony.  *See Hester v. BIC Corp.*, 225 F.3d 178, 184 (2d Cir. 2000) ("None of Hester's four witnesses was involved in BIC's decision-making processes, or had personal knowledge of it.  Nor had they any basis for knowing whether Hester was adequately performing her duties as a Group leader.  Their testimony about Beck's racist motivations was not 'focused on objective facts,' but instead consisted of the witnesses' subjective impressions that Beck's condescension to Hester was attributable to Hester's race.").  The Court SUSTAINS defendants' objections to this evidence.

United States District Court
For the Northern District of California

not actually show any racial animus.  The Court agrees.  Plaintiff does not explain how the fact that Withers showed McDougall the Black Panthers letter is evidence of *Officer McDougall* having racial animus.[5]  Merely describing plaintiff as aggressive, particularly in light of the fact that plaintiff bit McDougall, is not evidence of racial animus.  Plaintiff has only offered her subjective belief that the officers' use of force was racially motivated, and such subjective beliefs are insufficient to defeat summary judgment.  *See Gomez v. City of Fremont*, 730 F. Supp. 2d 1056, 1069 (N.D. Cal. 2010) (granting summary judgment in favor of defendant on plaintiff's § 1981 and Cal. Civ. Code § 51.7 claims where plaintiff only offered his subjective belief that officers used force on him because of his ethnicity); *Rodriguez v. Int'l Business Machines*, 960 F. Supp. 227, 231 (N.D. Cal. 1997) ("Plaintiff's subjective belief that IBM's actions were discriminatorily motivated simply is not sufficient to withstand summary judgment."); *McKenzie v. City of Milpitas*, 738 F. Supp. 1293, 1301-02 (N.D. Cal. 1990) (granting summary judgment in favor of defendant on plaintiffs' § 1981 claims where plaintiffs asserted "the situation 'indicates' a racial animus: The McKenzies are Black, the officers were scared of Lucille McKenzie and other female family members, and the officers 'immediately resorted to the use of force in a situation whose objective context did not call for this force . . . .'"); *see also Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005) ("Although the Thorntons maintain that defendants made a race-based classification, they have not offered evidence of racial discrimination, beyond the observation that Mrs. Thornton is Native American.").

The Court also finds that plaintiff has not submitted evidence of a conspiracy in support of her claims under 42 U.S.C. §§ 1985 and 1986.  Plaintiff alleges that there was a "meeting of the minds" when defendant McDougall met with "authority figures" from KPFA and Pacifica, including Withers, on August 20, 2008 after plaintiff was removed from the station.  Opp'n to Pacifica Mtn. at 13:9-15.  Plaintiff has submitted McDougall's deposition testimony, in which he stated that after plaintiff was removed from the station, he met with approximately three members of KPFA and/or Pacifica management, including Withers, to discuss "the investigation, and the disposition of the case," and it was during that meeting that the Pacifica defendants informed McDougall that they wished for the case

---

[5]  The Court discusses this evidence as it relates to Withers *infra*.

to go forward with a criminal complaint. Panto Decl. Ex. F (McDougall Depo. at 70:12-71:8, 144:15-145:1).

Plaintiff's evidence does not raise a triable issue of fact as to whether the officers conspired with the Pacifica defendants to violate plaintiff's rights. Plaintiff does not explain how a meeting that occurred after plaintiff's arrest could be evidence of a conspiracy to violate plaintiff's Fourth Amendment rights to be free of unlawful arrest and excessive force. Further, the allegedly conspiratorial meeting was, based on McDougall's undisputed testimony, a routine meeting in which McDougall informed the Pacifica defendants of "what we had done. That we had arrested Ms. Foster, that she was being taken to our jail in custodial arrest, that officers were taking statements from their employees. I think that was it." *Id*. at 71:5-8. No reasonable jury could infer a conspiracy to violate plaintiff's rights based upon the post-arrest meeting.

Accordingly, the Court GRANTS summary judgment in favor of defendants on plaintiff's claims under 42 U.S.C. § 1981, 42 U.S.C. § 1985, 42 U.S.C. § 1986, and Cal. Civ. Code § 51.7.

### C.     Bane Act, Cal. Civ. Code § 52.1

Plaintiff alleges that the Berkeley defendants violated the Bane Act, Cal. Civ. Code § 52.1. "Civil Code section 52.1 requires an attempted or completed act of interference with a legal right, accompanied by a form of coercion." *Austin B.*, 149 Cal. App. 4th at 882 (internal citation and quotation omitted). "To obtain relief under Civil Code section 52.1, a plaintiff need not allege the defendant acted with discriminatory animus or intent; a defendant is liable if he or she interfered with the plaintiff's constitutional rights by the requisite threats, intimidation, or coercion." *Id*.

Defendants move for summary judgment on this claim, contending that there is no evidence showing that the officers acted to interfere with plaintiff's civil rights. The Court agrees. As discussed *supra*, the evidence shows that the officers were called to remove plaintiff from the premises. There is no evidence that defendants interfered with plaintiff's constitutional rights by using threats, intimidation or coercion. Plaintiff's opposition does not advance any argument or identify any evidence in support of her Bane Act claims against the Berkeley defendants. Instead, plaintiff simply cites *Bobol* and asserts that *Bobol* demonstrates that officers can be held liable for a Bane Act violation. However, in *Bobol*

United States District Court
For the Northern District of California

the plaintiff arrestees were clearly involved in First Amendment activity, namely filming circus animals to document their treatment, and protesting the conditions under which circus animals were kept.  *See Bobol*, 754 F. Supp. 2d at 1101-02.  Here, plaintiff has not identified any protected speech or conduct with which the officers allegedly interfered.  The evidence shows that the officers responded to a call that plaintiff was trespassing, and when the officers encountered plaintiff, she was seated at a desk in an office by herself.

Accordingly, the Court GRANTS summary judgment in favor of defendants.

### D.    Malicious prosecution

Defendants contend that plaintiff's malicious prosecution claim is barred by California Government Code section 821.6, which provides that "a public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of employment, even if he acts maliciously and without probable cause."  Cal. Gov't Code § 821.6.

The Court agrees.  California courts have held that section 821.6 immunizes law enforcement officers from claims of malicious prosecution.  *See Baughman v. State of California*, 38 Cal. App. 4th 182, 193 (1995) ("Under Government Code section 821.6, the officers' actions during the investigation were cloaked with immunity, even if they had acted negligently, maliciously or without probable cause in carrying out their duties."); *Amylou R. v. County of Riverside*, 28 Cal. App. 4th 1205, 1211-13 (1994) (surveying cases).

Plaintiff contends that "the doctrine of qualified immunity applicable to federal civil rights claims does not apply to state civil rights claims."  Opp'n to Berkeley Mtn. at 21:22-24.  That argument is misplaced, as defendants are asserting immunity under state law, not federal.

Plaintiff also argues that California Government Code section 815.6 permits a malicious prosecution claim to proceed against defendants.  Section 815.6 states,

> Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty.

Cal. Gov't Code § 815.6.  Plaintiff asserts that the Ralph and Bane Acts impose mandatory duties "to

14

**United States District Court**
For the Northern District of California

1  protect against the risk of the deprivation of constitutional rights and against violence or the threat of

2  violence based upon race."  Opp'n to Berkeley Mtn. at 21:19-20.  However, assuming *arguendo* that

3  the Ralph and Bane Acts impose "mandatory duties" under section 815.6, the specific immunity granted

4  in section 821.6 prevails.  *See Cochran v. Herzog Engraving Co.*, 155 Cal. App. 3d 405, 411 (1984)

5  ("Assuming without deciding that the duties alleged by appellants are 'mandatory,' we find that they

6  still come within the scope of the applicable immunity provisions.").[6]

7

8        **E.      All claims against the Berkeley Police Department, former Chief Hambleton and
               the City of Berkeley**

9

10           In the seventh cause of action, plaintiff alleges a *Monell* claim against the Berkeley Police

11  Department and the former Chief of Police on the theory that because McDougall allegedly failed to

12  further investigate whether plaintiff was actually trespassing, there is a "deficient training program" that

13  amounts to "deliberate indifference" on the part of the City of Berkeley and its police department.

14  Plaintiff has failed to show any constitutional violation by McDougall, and thus her claim against the

15  City and the former Chief of Police fails as well.  Moreover, a single incident is not evidence of a pattern

16  or practice necessary to support a *Monell* claim against the City.  *See Canton v. Harris*, 489 U.S. 378,

17  392 (1989); *St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) (plurality opinion); *Pembaur v. City of*

18  *Cincinnati*, 475 U.S. 469, 478-79 (1986); *Oklahoma City v. Tuttle*, 471 U.S. 808, 818 (1985) (plurality

19  opinion).

20           Plaintiff also named the Berkeley Police Department as a defendant on the claims for intentional

21  infliction of emotional distress and assault and battery, under a theory of *respondeat superior*.  The City

22  of Berkeley argues that it has never been named as a defendant in this case because plaintiff erroneously

23  _____

24        [6]  Plaintiff's malicious prosecution claim is alleged under state law, and not pursuant to 42
     U.S.C. § 1983.  The Ninth Circuit has held that "the general rule is that a claim of malicious prosecution
     is not cognizable under 42 U.S.C. § 1983 if process is available within the state judicial system to
25   provide a remedy."  *Usher v. City of Los Angeles*, 828 F.2d 556, 561-62 (9th Cir. 1987).  However, "an
     exception exists to the general rule when a malicious prosecution is conducted with the intent to deprive
26   a person of equal protection of the laws or is otherwise intended to subject a person to a denial of
     constitutional rights."  *Id*. at 562.  An element of a claim of malicious prosecution is the lack of probable
     cause.  *See id*. (citing California cases).  Here, even if plaintiff had alleged a claim of malicious
27   prosecution under § 1983 (which would not be barred by state immunity), the claim would nevertheless
     fail on summary judgment because defendants had probable cause to arrest plaintiff and because there
28   is no evidence that defendants intended to deprive plaintiff of equal protection of the laws.

sued the Berkeley Police Department, not the City, and thus that the Court should dismiss these state tort claims against the City.   Citing *Garcia v. City of Los Angeles*, 588 F. Supp. 700 (C.D. Cal. 1984), the City argues that a police department is not a public entity under state law and therefore a police department cannot be sued in federal court.  However, the Ninth Circuit has explicitly declined to follow *Garcia*, and has held that police departments can be sued in federal court.  *See Shaw v. California Dep't of Alcoholic Bev. Control*, 788 F.2d 600, 605 & n.1 (9th Cir. 1986) (disapproving *Garcia*); *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 624 n.2 (9th Cir. 1988) ("Municipal police departments are 'public entities' under California law and, hence, can be sued in federal court for alleged civil rights violations."); *see also Streit v. County of Los Angeles*, 236 F.3d 552, 565 (9th Cir. 2001).

Accordingly, the Court GRANTS summary judgment in favor of defendants on plaintiff's *Monell* claim.  The Court DENIES defendants' motion to dismiss plaintiff's claims for intentional infliction of emotional distress and assault and battery against the Berkeley Police Department.

## II.     Pacifica defendants' motion for summary judgment

### A.      Claims under 42 U.S.C. § 1983

Plaintiff alleges three claims pursuant to 42 U.S.C. § 1983 against the Pacifica defendants. Plaintiff claims that the Pacifica defendants conspired with the Berkeley defendants to violate her Fourth Amendment rights by subjecting her to excessive force and an unlawful arrest.

Defendants move for summary judgment on these claims on numerous grounds.  Defendants contend that plaintiff lacks evidence establishing the Pacifica defendants as state actors under Section 1983.  A plaintiff asserting a claim under 42 U.S.C. § 1983 must show that (1) "the conduct complained of was committed by a person acting under color of state law" and that (2) "this conduct deprived the claimant of a constitutional right."   *Rinker v. County of Napa*, 831 F.2d 829, 831 (9th Cir. 1987). "Action taken by private individuals may be under color of state law where there is significant state involvement in the action."   *Johnson v. Knowles*, 113 F.3d 1114, 1118 (9th Cir. 1997) (internal quotations omitted).  "The Supreme Court has articulated four distinct tests for determining when the actions of a private individual amount to state action: (1) the public function test; (2) the joint action test;

1    (3) the state compulsion test; and (4) the governmental nexus test." *Id*.

2         Plaintiff contends that the joint action test applies here, and that the Pacifica defendants jointly

3    acted and conspired with the Berkeley police officers to arrest plaintiff without probable cause.

4    Plaintiff's theory is as follows: "Defendant Withers decided that she wanted to call the police.  Knowing

5    that she did not have the proper authority, she sought Ms. Estrada whose action implicates Defendant

6    Pacifica Foundation in arranging for the unlawful arrest.  Defendant Withers called the police.

7    Defendant Berkeley Police, including the two first responders, Defendants Keene and McDougall,

8    arrested Plaintiff without probable cause in reliance solely on information provided by Defendant

9    Withers.  Worst of all, Plaintiff was seriously and permanently injured by an egregious use of force on

10   the part of state actor Defendants."  Opp'n to Pacifica Mtn. at 17:3-10.

11        Defendants cite several Ninth Circuit cases for the proposition that "a single request to the

12   police, without more, was not sufficient to establish a claim against a private actor pursuant to § 1983."

13   *Peng*, 335 F.3d at 980 (citing *Howerton v. Gabica*, 708 F.2d 380, 385 (9th Cir. 1983) and *King v.*

14   *Massarweh*, 782 F.2d 825, 829 (9th Cir. 1986)).  In *Peng*, an arrestee sued his sister, her son, and a

15   county deputy under § 1983, alleging that the sister and her son gave false statements to the deputy,

16   resulting in the arrestee's arrest without probable cause, all in violation of the arrestee's Fourth

17   Amendment rights.  The Ninth Circuit affirmed the dismissal of the § 1983 claims against the sister and

18   the son, finding that there was no evidence that the deputy knew that the arrestee was innocent of the

19   charge (robbery), and that a single call to the police, without more, was insufficient to establish

20   concerted action between the private parties and the deputy.  *Peng*, 335 F.3d at 980; *see also Howerton*,

21   708 F.2d 385 (stating that a single call to the police may not be sufficient, but reversing dismissal of §

22   1983 claim against private landlords where "the Gabicas repeatedly requested aid by the police to effect

23   the eviction, and the police intervened at every step."); *King*, 782 F.2d at 829 (affirming dismissal of

24   § 1983 claim against landlord where landlord's "sole act was to call the police [and] [n]othing in the

25   record indicates that Massarweh exerted any control over the officers' decision to search appellants'

26   apartments or to arrest the appellants.").

27        Here, plaintiff has not submitted any evidence that Officer McDougall or Officer Keene knew

28   that plaintiff was innocent of trespass, and to the contrary, as discussed *supra*, the record shows that the

**United States District Court**
For the Northern District of California

1   officers had probable cause to arrest her for trespass.  Under *Peng*, *Howerton*, and *King*, Withers' single

2   call to the police, without more, is insufficient to establish concerted action between the Pacifica

3   defendants and the police officers.  Accordingly, the Court GRANTS summary judgment in favor of

4   defendants on plaintiff's § 1983 claims.

5

6   **B.**     **Racial animus and conspiracy claims (42 U.S.C. § 1981, 42 U.S.C. § 1985, 42 U.S.C.**
            **§ 1986, Cal. Civ. Code § 51.7)**

7

8   As stated in Section I.B. plaintiff's claims under 42 U.S.C. § 1981, 42 U.S.C. §§ 1985 and 1986,

9   and Cal. Civ. Code § 51.7 all require proof of discriminatory animus, and plaintiff's claims under

10  §§ 1985 and 1986 require proof of a conspiracy.  The Court finds that plaintiff has not raised a triable

11  issue of fact as to either racial animus or conspiracy.  Plaintiff's theory of racial animus on the part of

12  Withers and the Pacifica defendants is as follows:  that plaintiff was volunteering at KPFA, and thus "a

13  reasonable inference could lead a jury to find that Plaintiff did have work at KPFA, Defendant Withers

14  did not have any reason or right to call the police, and that Defendant Withers harbored racial animus

15  which did motivate her to call the police whether or not Defendant Withers herself is aware of it."

16  Opp'n to Pacifica Mtn. at 8:18-21.  Similarly, in response to an interrogatory asking plaintiff to identify

17  all documents and deposition testimony supporting plaintiff's allegation that Withers is racist, plaintiff

18  responded, *inter alia*, that "Plaintiff alleges that Defendant Withers acted based upon race animus even

19  if Defendant Withers is not aware or does not believe that racism is an infection that may insidiously

20  motivate actions."  Ngo Decl. Ex. S (Response No. 25).

21  Plaintiff speculates that Withers harbored racial animus towards her based on the fact that

22  Withers called the police, and because Withers showed McDougall the letter written by plaintiff to a

23  Black Panther.  With regard to the call to the police, plaintiff only speculates that Withers and the

24  Pacifica defendants would not have called the police if plaintiff had been white, and plaintiff does not

25  actually have any evidence in support of that assertion.  With regard to the Black Panther letter, plaintiff

26  argues that Withers was "uncomfortable" with the letter, and that her discomfort is a sign of racial

27  animus.  In fact, however, in the deposition testimony cited by plaintiff, Withers stated that at some

28  point mail had been returned to KPFA, that Withers opened the mail and "wouldn't read through

United States District Court
For the Northern District of California

document because I thought it was personal," and that Withers could tell the letter was from plaintiff because her name was either at the top or the bottom of the letter.  Panto Decl. Ex. A (Withers Depo. at 185:13-25).  Withers then testified,

> A.  . . . And when the officer came and we were talking about what happened, he said, "What kind of mail?"  And I said, "Well, I think it's still here."  So I went to get it and he looked at it and he told me that it was addressed to prisoners.
>
> Q.  Okay.  Did you take a closer look at it then?
>
> A.  I don't think so.
>
> Q.  Okay.
>
> A.  I think he took it with him, actually.
>
> Q.  Okay.  Is there – was there any work that she could have – that Nadra Foster could have been doing related to prisoners for KPFA?
>
> A.  No.  I do know it mentioned Black Panthers.  Because that caught my eye.  But I don't know what kind of work, if any, she would have been doing around anything like that.

*Id*. at 186:8-23.  Contrary to plaintiff's characterizations of Withers' testimony, Withers did not testify that was she was uncomfortable with the letter.  Withers' statement that the mention of the Black Panthers "caught my eye" is not evidence that Withers intentionally discriminated against plaintiff on account of her race.  As with plaintiff's claims against the Berkeley defendants, plaintiff's claims of racial animus against the Pacifica defendants are based on speculation and thus cannot withstand summary judgment.

Plaintiff also does not have evidence of a conspiracy.  Plaintiff contends that the "conspiracy started with Defendant Withers who was motivated by race animus based upon Plaintiff's race and political affiliation with African-American prisoners or the Black Panther Party for Self-Defense."  Opp'n to Pacifica Mtn. at 13:17-19.  However, as stated *supra*, plaintiff does not have any evidence that Withers was motivated by racial animus.  Plaintiff claims that Withers "recruited" Estrada, "who voluntarily joined in the conspiracy to deprive Plaintiff of her civil rights when the decision was taken to call the police."  *Id*. at 13:21-23.  While plaintiff disputes whether she was actually banned from the

radio station, the evidence is undisputed that Withers *believed* that plaintiff was banned from the station. Withers conferred with Estrada, the Human Resources Director, about whether the police should be called because plaintiff refused to leave the station.  Plaintiff argues that "the meeting of the minds occurred either when Defendant Berkeley Police accepted the [Black Panther] mail as justification for the arrest or when Defendant McDougall conferred with citizens after the arrest regarding whether or not there should be criminal charges."  *Id*. at 14:8-11.  However, there is no evidence that the Police Department "accepted" the letter as justification for the arrest; plaintiff was arrested for trespass, and McDougall was shown the letter after the arrest.  No reasonable jury could conclude that there was a conspiracy based upon these facts.  The Court GRANTS summary judgment in favor of defendants.

### C.    Bane Act, Cal. Civ. Code § 52.1

"Civil Code section 52.1 requires an attempted or completed act of interference with a legal right, accompanied by a form of coercion."  *Austin B.*, 149 Cal. App. 4th at 882 (internal citation and quotation omitted).  "To obtain relief under Civil Code section 52.1, a plaintiff need not allege the defendant acted with discriminatory animus or intent; a defendant is liable if he or she interfered with the plaintiff's constitutional rights by the requisite threats, intimidation, or coercion."  *Id.*

Plaintiff does not have any evidence that the Pacifica defendants used threats, intimidation or coercion to interfere with plaintiff's constitutional rights.  Simply calling the police, without more, does not amount to a violation of the Bane Act.  *See Jones v. Kmart*, 17 Cal. 4th 329, 334 (1998) ("For example, if a burglary victim, suspecting that his stolen property lay hidden in a nearby house, stood at the door with the police and threatened to injure the homeowner if she did not change her mind and consent to an official and warrantless search of her premises, the homeowner might, under section 52.1, be able to sue her neighbor for interfering with her Fourth Amendment rights, assuming for purposes of this example that the Fourth Amendment protected her against warrantless searches by the state without her consent under the circumstances.").  Plaintiff argues that "Defendant Withers did coerce and intimidate Plaintiff in an attempt to get Plaintiff to leave KPFA premises."  Opp'n to Pacifica Mtn. at 15:11-12.  Plaintiff does not identify the constitutional right with which Withers allegedly interfered; plaintiff did not have a constitutional right to be at the KPFA station premises.  The Court GRANTS

1   summary judgment in favor of defendants.

2

3       **D.      Intentional infliction of emotional distress**

4       Plaintiff alleges a claim for intentional infliction of emotional distress against the Pacifica

5   defendants.   Plaintiff claims that it was extreme and outrageous for Withers to call the police,

6   "especially without clearly informing Plaintiff first that she was no longer entitled to be on the

7   premises."  Opp'n to Pacifica Mtn. at 18:5-6.  Plaintiff claims that the Pacifica defendants knew or

8   should have known that the arrival of the police would cause plaintiff emotional distress.

9       The elements of the tort of intentional infliction of emotional distress are: "(1) extreme and

10  outrageous conduct by the defendant with the intention of causing, or reckless disregard of the

11  probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional

12  distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous

13  conduct."  *Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991).  "Conduct to be outrageous must

14  be so extreme as to exceed all bounds of that usually tolerated in a civilized community."  *Davidson v.*

15  *City of Westminister*, 32 Cal. 3d 197, 209 (1982).

16      Defendants argue that plaintiff has failed to show extreme and outrageous conduct.  The Court

17  agrees.  While plaintiff disputes whether she was actually banned from the station, it is undisputed that

18  Withers believed that plaintiff was banned and that plaintiff refused to leave the station when asked.

19  Withers consulted with KPFA and Pacifica management, and then decided to call the police to have

20  plaintiff removed for trespassing.  This conduct is not "so extreme as to exceed all bounds of that usually

21  tolerated in a civilized community."   *Id*.   The Court GRANTS summary judgment in favor of

22  defendants.

23      **E.      Assault and battery**

24      Plaintiff alleges that the Pacifica defendants committed assault and battery.  To establish a claim

25  of assault and battery, plaintiff must prove that defendants touched plaintiff with the intent to harm or

26  offend her, plaintiff did not consent to the touching, and plaintiff was harmed or offended by defendants'

27  conduct. *See Boyd v. City of Oakland*, 458 F. Supp. 2d 1015, 1051 (N.D. Cal. 2006); *see also Ashcraft*

28  *v. King*, 228 Cal. App. 3d 604, 611 (1991).

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

Defendants move for summary judgment on these claims, and have submitted evidence showing that none of the Pacifica defendants touched plaintiff on August 20, 2008.  Defendants have submitted the following excerpt from plaintiff's deposition testimony:

Q.    I just want to be clear.  And no one from the Pacifica defendants struck you that day?

A.    No.

Q.    Or otherwise assaulted or battered you.

A.    No.

Q.    So what you're saying is that you believe that the assault and battery derived from the phone call?

A.    Yes.

Ngo Decl. Ex. G (Foster Depo. at 399:4-11).  Defendants have also submitted plaintiff's discovery responses in which she admits that defendant Withers did not physically assault, physically batter, or physically touch plaintiff on August 20, 2008.  Ngo Decl. Ex. T (Pl's Response to RFA No. 2(b), (c), and (d)).

Plaintiff's opposition concedes that she does not have any evidence in support of her assault and battery claims against the Pacifica defendants.  Opp'n to Pacifica Mtn. at 17:12-14.  Based upon this record, the Court GRANTS defendants' motion for summary judgment on these claims.

### F.    Malicious prosecution

"Cases dealing with actions for malicious prosecution against private persons require that the defendant has at least sought out the police or prosecutorial authorities and falsely reported facts to them indicating that plaintiff has committed a crime." *Sullivan v. County of Los Angeles*, 12 Cal. 3d 710, 720 (1974).  Defendants contend that they are entitled to summary judgment on this claim because Withers reasonably held the belief that plaintiff was trespassing, and plaintiff does not have any evidence that any of the Pacifica defendants lied to the police.  In response, plaintiff simply asserts that "the call to the police and request for prosecution was maliciously based upon [plaintiff's] race as an African-American."  Opp'n to Pacifica Mtn. at 19:4-5.

United States District Court
For the Northern District of California

The Court finds that plaintiff has not submitted any evidence showing that defendants falsely reported facts to the police, and thus that defendants are entitled to summary judgment on this claim. Further, although plaintiff argues that the call to the police and request for prosecution was based upon her race, plaintiff does not have any evidence in support of this assertion.  Accordingly, the Court GRANTS summary judgment in favor of defendants.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS in part and DENIES in part the motion for summary judgment filed by the City of Berkeley, and GRANTS the Pacifica defendants' motion for summary judgment.  Docket Nos. 47 and 49.

**IT IS SO ORDERED.**

Dated: November 22, 2011

_____
SUSAN ILLSTON
United States District Judge